We move to the third case this morning, Bank of America v. Martinson. I've seen it. Thank you, and may it please the Court. I'm Attorney Kimberly Alderman, and I'm representing Carl Green and his wife Dawn Green, formerly Martinson, in their appeal of a judgment of foreclosure entered in the U.S. District Court in the Western District of Wisconsin. Today, I'll argue that the Court has jurisdiction, the objections were preserved, and the evidentiary rulings in question were an abuse of discretion. This Court has jurisdiction over appeals from final decisions of the District Court. Traditionally, the judgment of foreclosure is a final one, but it has recently been questioned whether that practice should be continued since the judgment of foreclosure can no longer be immediately executed. To the extent that Wisconsin laws have some guidance, it is not possible to appeal the judgment of foreclosure from the confirmation of sale order. You can only appeal the judgment of foreclosure within 45 days of its entry, regardless of that redemption period. An equitable title is transferred with the judgment of foreclosure, and the confirmation order is viewed as an execution of the final judgment that was already entered. The Federal Rule of Appellate Procedure 4A provides that the notice of appeal is filed with the District Clerk within 30 days after the entry of the final judgment, and the Green's notice was filed in the District Court in this case on December 9th, within 30 days of entry, and this Court's and the District Court's dockets reflect this fact. The bank argues that the Green's failed to object at trial, but the first advisory note – Could we talk about – I just want to ask you about the jurisdictional issue a little more. This is an issue that's popping up in several cases in different states, and equitable title may be transferred at the time of the foreclosure judgment, but does possession change at that point? Possession does not change. It would depend on the state, of course, as to what the exact bundle of rights that is transferred at the time of the judgment of foreclosure, but in Wisconsin, for instance, the right to collect rents would turn over to the bank at the judgment of foreclosure. Whether they use that right or not is another question. I guess, well, our order from a couple of weeks ago suggested looking at a Supreme Court decision called Forgay, which went back to before the Civil War, but where the issue really was about when the borrower, who's the target of foreclosure action, suffers irreparable harm from the judgment. Under the Wisconsin scheme, when do you think that happens and why? Well, it would be the judgment of foreclosure because that's when the appellate clock starts ticking. That's circular. That gets back to the problem when we're in federal court of when we've got a final judgment. Okay. When is there irreparable harm, which might be loss of possession or the vesting of some kind of significant rights in a buyer at the time of a foreclosure sale before confirmation? Does that happen? The buyer has the right to retain possession of the property, but other rights such as the right to collect rents are transferred at the entry of the judgment of foreclosure. And because the courts generally will not stay the execution of the judgment pending an appeal, the judgment of foreclosure becomes operable. Well, why won't they stay the- Well, you can ask. It just doesn't happen very often as a matter of practice. Well, usually there won't be any money, right, to protect the lender at that point. Right. But that's a normal kind of issue. We'd still have the same issue if the appeal were being taken at the time of the confirmation of sale, right? Well, at the point of the confirmation of sale, if you were to permit an appeal of the judgment of foreclosure from the confirmation order, then you would have the transfer of possession to the bank and people would be ejected from their homes and they wouldn't be able to see out the appellate process. But you could seek a stay pending appeal. Yes. Right? At the time of the confirmation order. Yes. There are actually a couple different ways that you can seek the stay. If there's an appeal pending, you can go to the lower court and do it. If that doesn't work out, you can do it from the appellate court. Same in the federal courts, right? Okay. The bank argues that the Greens failed to object at trial, but the first advisory note to Federal Rule of Evidence 103 says the requirement is to call attention to the judge as to the nature of the error. An objection is described as one of the techniques used to accomplish this objective. Throughout the litigation, the Greens repeatedly raised doubt as to the authenticity of the second note. At trial, they questioned the bank's representative on her lack of personal knowledge about the second note and her lack of personal knowledge as to the accuracy of the account statement. The purpose of the objection requirement in Rule 103 is to make the court and the other parties aware of the issues and disputes that corrective measures can be taken. This was something that was discussed and focused on rather extensively at trial, and the court and the other party was aware. The bank created doubt on authenticity of the note when it made conflicting assertions as to how it came to acquire interest in it, and it filed an assignment and two materially different copies of the note, and the bank should bear the burden of that doubt. Only one of the potential vehicles for transfer could have been effective, however. If the assignment transferred the interest, as the bank initially alleged, then authentication of the endorsement would be meaningless because the endorsement couldn't have transferred the interest if Countrywide had already transferred it. And at the time of trial, Bank of America had just entered into a settlement with the Wisconsin Attorney General's Office for wrongdoings and similar documentation. The bank has never explained, despite repeated opportunities, how the endorsed note came to exist after commencement of the action or when it received it, which, given the fact that that was a critical question as expressed by the court and the fact that that information was available to the bank's representative as to when the endorsed note was digitized to come to trial and not have that information on hand is questionable. This all created reasonable doubt as to the legitimacy of how the endorsed note came to exist, and therefore it could not be self-authenticated. Even the bank cannot know whether it had an interest at the suit's inception without a date for that endorsement, and under these circumstances, the note cannot self-authenticate under Federal Rule of Civil Procedure 902 and the testimony is necessary for authentication. Yet the bank's representative at trial had no personal knowledge regarding the endorsement, and it was well noted by the court. She didn't know when the physical note had passed to the bank. She believed it was through a collateral file, but she hadn't handled it, didn't know where it was kept. She did not touch the note until the day before trial. She saw a digitized copy a few weeks before trial. What's the effect then with regard to your client, apart from this litigation? In terms of the prejudice or the harm? No, the property itself. Well, they've lost the property, and they've lost title and the rights to collect rent from it. Assuming they went the other way then. They keep the property, and who do they owe any money to? Well, they would owe it to the rightful note holder. I mean, I understand that courts go and it's totally natural to ask the question, well, should someone get the benefit of a bank's mishap? But the fact is that the bank should be held to a standard. We're not saying no one should be able to foreclose. I mean, that may very well be the truth, but they should be held to a burden. That gets to my point. Who do you pay, or do you just get it without paying anybody? Well, maybe they'll pay the Bank of America, but the Bank of America should have to present appropriate documentation. And, I mean, it's not hard. And you're saying they didn't. They did not at this trial, no. And they presented a rep who didn't have. So what happens to the property then? Well, they can try again if they want to get their documentation together or present a representative that has personal knowledge about the note, the endorsement, the accuracy of the account statement. Or you just get to keep it. Well, that would be up to the grains. But the representative also didn't have personal knowledge as to the accuracy of the account statement. And that's a problem because you need that to have it fall under the business record exception to the prohibition against hearsay. And this is much different than this court's decision in Briscoe where the representative was able to explain a very specific procedure. She was able to explain quality controls as opposed to relying on bank policy and unspecified training. This particular rep was totally unaware of the settlement as well, so she couldn't explain why she was certain that this wasn't one of those wrongfully manufactured endorsements. And accordingly, admission of the statement as business record. How did the wrongfully manufactured endorsements come into evidence? Well, it was something that the Greens brought up at trial and the bank discussed as well because just right before trial, the Bank of America had entered into a settlement with the Wisconsin Attorney General where endorsements had been put on notes after actions had commenced. But because you need standing at the commencement of the action, it ended up being not an entirely lawful methodology of gaining standing. My question is how did that come into evidence in this case? But you're saying it's based on the settlement agreement that they entered into. I don't think the court said explicitly that it was taking judicial notice, but that was the effect of the discussion. And it was raised to create doubt as to the accuracy. Thank you. Thank you very much. Mr. Chastain. Good morning, Your Honors. May it please the Court, I'm Aaron Chastain here for Bank of America. Your Honors, I'll first address the jurisdictional question that this court raised in its order about a week ago. Your Honors, it's long established that a judgment of foreclosure such as this one is a final judgment for the purposes of an appeal. We submitted a supplemental briefing letter. I know that was over the holidays. But we cited the case of Grant v. Phoenix Insurance Company. This is a United States Supreme Court decision. And in that case the court held, it has been many times decided that a decree of sale in a foreclosure suit, which settles all the rights of the parties and leaves nothing to be done but to make the sale and pay off the proceeds, is a final decree for the purposes of an appeal. And that's precisely what we have in this case. And I know there's a little uncertainty with the fact that there has to be a subsequent judicial proceeding to confirm the sale. But, Your Honors, that's a very common practice. It dates back for several hundred years. In fact, that was the fact pattern in one of the cases the Grant case cites, the Whiting v. Bank of the United States. And you can see in that case the court went further and said, even if it requires a subsequent judicial confirmation of the foreclosure sale, that doesn't change the fact that the judgment of foreclosure is the appealable final judgment. Is there irreparable harm to the borrower at the time of the foreclosure under Wisconsin law? There is not irreparable harm, Your Honor. Your reference to the Forgay Doctrine wouldn't apply in that case. But Forgay is an exception, or it's a practical finality doctrine. We're arguing that under straight-up finality, under 1291, this is an appealable final judgment. And furthermore, there would be irreparable harm, not from the actual judgment, but if the borrower were unable to appeal it immediately, because this Court has held that once the confirmation sale goes through and a bona fide purchaser purchases the property, any arguments about the validity of the judgment of foreclosure are moot. That's N. Ray Memorial Estates, 950 F. 2nd, 1364. That was a decision by this Court, and there are others, holding that it is moot to appeal a confirmation order. Unless you get a stay. Yes, Your Honor. I suppose that you could get a stay, but I'm not sure what exactly that would apply to. I mean, obviously it could not affect a third-party purchaser, and there's not a judgment. Well, sure it could. Well, it could apply to the Court case. You stay the confirmation of the sale. Yes, Your Honor. To the extent you could ask the Court to stay the confirmation of the sale, then that would avoid mooting out the appeal. Yes, Your Honor. I agree with that. We would go back, though, to saying that it's simply a final order, that all the rights of the parties are settled when you have this judgment of foreclosure. We have a firm amount. Okay. We've got HSBC in another case telling us that it's not final. Yes, Your Honor. Not HSBC in the case earlier today, but in another. Well, I understand, Your Honor. I can't obviously speak to the facts of this case, but I would say this one is fairly cut and dry. The judgment says it's a final order, which obviously is not determinative. Right. Right. Of course, Your Honor. But it has all the requirements for finality that the United States Supreme Court has always required in the foreclosure context. So we'll move on to the merits of this case. Appellants raise evidentiary issues, but what they seem to avoid are two things. One, the fact that there are many undisputed facts in this case, and those undisputed facts more or less dispose of this appeal. It's undisputed that Mrs. Martinson, now green, executed a valid and enforceable promissory note. It's never been disputed that the note is enforceable by somebody. It's undisputed that she defaulted on the loan evidence by that note, and I think it was April 2009, has not made a payment since then, and someone has a right to foreclose on property as a result of that note. It's also undisputed that Countrywide Bank originated this loan, had the note at the time of origination. It's undisputed that Bank of America acquired Countrywide Bank, and that was effectuated by a change of name for Countrywide into BAC Home Loan Servicing and a subsequent merger, which is in the record of BAC Home Loan Servicing. How were the mortgage or the borrowers notified to change who they were making their payments to? Well, Your Honor, I believe, and I certainly could be incorrect about this, they required a federal statute to give notice of the servicer of the loan. I don't believe there's a federal requirement that they give notice of who owns the loan unless they ask, but I do believe, Your Honor. No, I didn't say who owned it. I said who they make the payments to. Well, the payments go to the servicer, Your Honor, and they are required to receive notice from whoever services the loan that that is how they receive payments in the process, and there's never been any issue raised in this case that they were not on notice as to how to submit their payments. They've only argued that they don't know who is the underlying owner of the debt, and, Your Honor, we would say that's firmly established in the case, but it's also irrelevant to the practical. So if I understand this correctly, the payments continue to be made to this entity even though they may not have owned the loan? Yes, Your Honor, they would continue to be made to the loan servicer for as long as that entity. As an entity that was just taking in the payments? Yes, Your Honor, as a servicer. In this case, I don't think the record even tells us who the servicer was. I strongly suspect it was Bank of America for the entire relevant time period, but that's what the borrowers, the Greens, need to know. They simply need to know how to submit a payment and how to make sure it's paid. So what happened at trial, Your Honors? As we pointed out in the brief, the Greens never objected to any evidence at trial, to admission of any evidence at trial. They say in the reply brief that they objected at one point in the transcript, I think it's page 13, but the transcript doesn't show any of that. They never objected to Bank of America's evidence. They never objected to anything that Bank of America's witness said. The only basis for this entire appeal is the fact that the district court went above and beyond what it had to do and had a colloquy with the witness, establishing foundation for the business records exception. Your Honor, everything that the appellants have picked out in the briefs or snippets from the trial transcript where the district court is working to develop the testimony to put his mind at ease as to the foundation for those business records. Your Honor, that is the sort of thing that calls for the application of very deferential review. Several times in appellant's argument, they make statements such as, Bank of America had to bear the burden of the doubt it created or there was reasonable doubt as to who owned this note or as to the witness's qualifications to offer a testimony. Your Honor, that flips the standard completely around. To the extent they even have a right to raise this argument on appeal after not making the objections in district court, which we wouldn't concede, is a very deferential review, and the district court thought a lot about this issue. It was upset that at summary judgment that there appeared to be discrepancies between the original copy of the note submitted with the complaint and the one submitted at summary judgment, and it wanted to develop it at trial. And so, Your Honor, the court looked very closely at it, and it reached a determination that Bank of America was the holder of the original promissory note and entitled to enforce it from the time this foreclosure action was filed. Your Honor, we'd say that's the end of the case. Does the physical original still exist? Yes, Your Honor. It was presented at trial. It was handed in as both of us. Not just a printout of it, did you type it? No, Your Honor. It was the original note. You'll see in the transcript, I think it's page four, counsel for Bank of America actually makes a comment about not wanting to mark it as an evidentiary exhibit because it's an original promissory note worth half a million dollars, at least in name. That was the original note. And it always existed in this collateral file. The witness explained this process. Bank of America has what is called a collateral file. She says it's a manila envelope that has original loan documents. Sounds remarkably old-fashioned. Absolutely, Your Honor. And if we go back further, I'm sure we'd find other interesting facets in this case. But it always existed in Bank of America's records. And the witness testified that she had looked at both the electronic imaging software, which pulled images from the loan documents, and had reviewed those, but also had tracked that with Bank of America's collateral file. And that's what enabled her to say that this is the original promissory note containing the original, I say blue ink endorsement in the colloquial sense, I don't know if it was blue or black, but containing the wet ink endorsement on the note. And that was what was presented to the district court. And the Greens didn't object to that formally. Is there any provision on the note itself or assignment to someone? Your Honor, I confess I'm not immediately familiar. I suspect that the note does say that it may be assigned. But the UCC governs, Your Honor. It obviously is enforceable by holder. I meant on the note itself whether there was an assignment. Oh, the endorsement is on the note. It's endorsement in blank, which means that the bearer is entitled to enforce it. It's not a separate allonge like you'll see in many of these cases. So there's no question that that was the original note. And to make things clear, what happened in this case, Your Honors, when Bank of America filed its original complaint in state court, it attached a copy of the note that was taken, was made at the time the loan was first executed, originated, that didn't have an endorsement on it because there was no need for one. It was Countrywide Banks. It was an image in their software, a snapshot, if you will, of what it looked like at that time. And what happened is when we got to summary judgment, not at trial, summary judgment well before this AG settlement, summary judgment we presented a copy of the original note as it then existed that had this endorsement. And then we did a poor job of explaining that to the district court, which is why we ended up having to try this on the merits. But that original image was simply a document, a snapshot of what the note had looked like when it was closed. I see my time is up unless the court has any further questions. Thank you, Your Honors. Your time I think has expired, but I'll give you a minute. Thank you, Your Honors. I'll make this brief. Bank of America has said that someone has a right to foreclose on this note and they would like this court to uphold the district court's decision that it might as well be them. All they have to do is initiate an action, demonstrate that they're the real party in interest and that they have standing from the inception of the action to the judgment. If they had been able to do this in this case, then the court wouldn't have denied their motion for summary judgment. The court made a factual finding that there was a dispute as to whether plaintiff was the holder and its decision on that motion for summary judgment. And at the trial, it said there's certainly a reason to believe that the endorsement was added after September of 2009. And the court making that finding and then still applying the self-authentication rule was an abuse of discretion. No reasonable person would do that. Find that there's no doubt as to the authenticity when it found that there was doubt as to the authenticity. Also, I would add that it is not on record that the bank's representative looked at the digitized record with the collateral file or the original note. It was kind of alluded to that maybe that happened, but she didn't really say that. It kind of sounded like she'd looked at the digitized record weeks ago and it kind of looked the same. And if the court has no further questions, we will otherwise rest on our briefs. Thank you very much. Thank you. Thanks to both counsel. The case is taken under advisement.